## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SALLY SCAGLIONE, as Putative
Personal Representative of the Estate
of PETER THOM,

                                     Case No.:  8:24-CV-2340-KKM-CPT

     Plaintiff,

v.

TOYOTA MOTOR MANUFACTURING,
TEXAS, INC., a Foreign Profit
Corporation; TOYOTA MOTOR NORTH
AMERICA, INC., a Foreign Profit
Corporation; TOYOTA MOTOR
ENGINEERING & MANUFACTURING
NORTH AMERICA, INC., a Foreign Profit
Corporation; and TOYOTA MOTOR
CORPORATION, a Foreign Profit
Corporation,

     Defendants.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SALLY SCAGLIONE, as Putative Personal Representative of the

Estate of PETER THOM ("SCAGLIONE"), by and through the undersigned

counsel, hereby sues Defendants, TOYOTA MOTOR MANUFACTURING,

TEXAS, INC. ("TMMTX"), and TOYOTA MOTOR NORTH AMERICA, INC.

("TMNA"), and TOYOTA MOTOR ENGINEERING & MANUFACTURING

NORTH AMERICA, INC. ("TEMA") and TOYOTA MOTOR CORPORATION

("TMC"), stating:

## JURISDICTION, VENUE AND PARTIES

1.      This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, thus vesting this Court with jurisdiction under 28 U.S.C. §1332.  Additionally, venue is proper pursuant to 28 U.S.C. §1391 as the incident which gives rise to this action occurred in within this judicial district.

2.      At all times material to this action, Sally Scaglione was and is a citizen of the State of Florida and she resides in this judicial district.

3.      At the time of the death of Peter Thom and at all times material to this action, Sally Scaglione was the legal spouse of and cohabitant with Peter Thom.

4.      TMMTX was and is a citizen of the state of Texas, as TMMTX is a business entity incorporated under the laws of the state of Texas with its principal place of business at 1 Lone Star Pass, San Antonio, Texas 78264.  At all times material to this action, TMMTX was doing business throughout the United States of America, including throughout the state of Florida, for which it received substantial revenue. TMMTX'S registered agent for service of process is CT CORPORATION SYSTEM, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5.      At all times material to this action, TMMTX submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the

following acts:

    a. **SPECIFIC JURISDICTION:** Operating, conducting, engaging in, or carrying on a business or business venture in Florida, including by maintaining business interests and authorized automotive dealerships in the state of Florida;

    b. **SPECIFIC JURISDICTION:** Having an office or agency in Florida, including through the maintenance of business interests and authorized automotive dealerships in the state of Florida;

    c. **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

    d. **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service activities within the state of Florida, including through business interests and authorized automotive firearm dealerships in the state of Florida;

    e. **SPECIFIC JURISDICTION:** Breaching a contract in the state of Florida, whether through act or omission, which must be performed in the state of Florida under the terms of the contract, including the requirement that Defendant provide reasonably safe and non-defective equipment to Florida governmental agencies and/or in the operation of business interests and authorized automotive dealerships in the state of Florida; and

    f. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and authorized automotive dealerships in the state of Florida.

6.     Accordingly, at all times material to this action, TMMTX voluntarily submitted itself to the jurisdiction of this Court and, as a result, TMMTX is subject to this Court's jurisdiction.

7.     TMNA was and is a citizen of the state of California, as TMNA is a business entity incorporated under the laws of the state of California.  Additionally, TMNA is a citizen of the state of Texas as TMNA has its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.  At all times material to this action, TMNA was doing business throughout the United States of America, including throughout the state of Florida, for which it received substantial revenue.  TMNA's registered agent for service of process is CT CORPORATION SYSTEM, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

8.     At all times material to this action, TMNA submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the following acts:

   a. **SPECIFIC JURISDICTION:** Operating, conducting, engaging in, or carrying on a business or business venture in Florida, including by maintaining business interests and authorized automotive dealerships in the state of Florida;

   b. **SPECIFIC JURISDICTION:** Having an office or agency in Florida, including through the maintenance of business interests and authorized automotive dealerships in the state of Florida;

   c. **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were

defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

d. **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service activities within the state of Florida, including through business interests and authorized automotive firearm dealerships in the state of Florida;

e. **SPECIFIC JURISDICTION:** Breaching a contract in the state of Florida, whether through act or omission, which must be performed in the state of Florida under the terms of the contract, including the requirement that Defendant provide reasonably safe and non-defective equipment to Florida governmental agencies and/or in the operation of business interests and authorized automotive dealerships in the state of Florida; and

f. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and authorized automotive dealerships in the state of Florida.

9.    Accordingly, at all times material to this action, TMNA voluntarily submitted itself to the jurisdiction of this Court and, as a result, TMNA is subject to this Court's jurisdiction.

10.    TEMA was and is a citizen of the state of Kentucky, as TEMA is a business entity incorporated under the laws of the state of Kentucky.  Additionally, TEMA is a citizen of the state of Texas as TEMA has its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.  At all times material to this action,

5

TEMA was doing business throughout the United States of America, including throughout the state of Florida, for which it received substantial revenue. TEMA's registered agent for service of process is CT CORPORATION SYSTEM, 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

11.   At all times material to this action, TEMA submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the following acts:

    a.   **SPECIFIC JURISDICTION:** Operating, conducting, engaging in, or carrying on a business or business venture in Florida, including by maintaining business interests and authorized automotive dealerships in the state of Florida;

    b.   **SPECIFIC JURISDICTION:** Having an office or agency in Florida, including through the maintenance of business interests and authorized automotive dealerships in the state of Florida;

    c.   **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

    d.   **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service activities within the state of Florida, including through business interests and authorized automotive firearm dealerships in the state of Florida;

e. **SPECIFIC JURISDICTION:** Breaching a contract in the state of Florida, whether through act or omission, which must be performed in the state of Florida under the terms of the contract, including the requirement that Defendant provide reasonably safe and non-defective equipment to Florida governmental agencies and/or in the operation of business interests and authorized automotive dealerships in the state of Florida; and

f. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and authorized automotive dealerships in the state of Florida.

12.    Accordingly, at all times material to this action, TEMA voluntarily submitted itself to the jurisdiction of this Court and, as a result, TEMA is subject to this Court's jurisdiction.

13.    TMC was and is a Japanese corporation with its principle place of business in Japan.  At all times material to this action, TMC was doing business throughout the United States of America, including throughout the state of Florida, for which it received substantial revenue.

14.    At all times material to this action, TMC submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, the following acts:

a. **SPECIFIC JURISDICTION:** Operating, conducting, engaging in, or carrying on a business or business venture in Florida, including by maintaining business interests and authorized automotive dealerships in the state of Florida;

b. **SPECIFIC JURISDICTION:** Having an office or agency in Florida, including through the maintenance of business interests and

authorized automotive dealerships in the state of Florida;

c. **SPECIFIC JURISDICTION:** Committing a tortious act within Florida, which includes but is not limited to: the supply, sale, and/or distribution of defective products including those which were defectively designed, manufactured, and/or which contain defective warnings or a complete lack of warnings and whereby, the exercise of control or lack thereof in the process of supplying and not recalling defective equipment and, further, in failing to warn those who might reasonably be damaged by defective products constitutes tortious conduct under Florida law;

d. **SPECIFIC JURISDICTION:** Causing injury to persons within the state of Florida arising out of an act or omission by Defendant even while Defendant was outside the state of Florida where—at the time of injury—Defendant was engaged in solicitation or service activities within the state of Florida, including through business interests and authorized automotive firearm dealerships in the state of Florida;

e. **SPECIFIC JURISDICTION:** Breaching a contract in the state of Florida, whether through act or omission, which must be performed in the state of Florida under the terms of the contract, including the requirement that Defendant provide reasonably safe and non-defective equipment to Florida governmental agencies and/or in the operation of business interests and authorized automotive dealerships in the state of Florida; and

f. **GENERAL JURISDICTION:** Engaging in substantial and not isolated activity within Florida, including through business interests and authorized automotive dealerships in the state of Florida.

15.    Accordingly, at all times material to this action, TMC voluntarily submitted itself to the jurisdiction of this Court and, as a result, TMC is subject to this Court's jurisdiction.

16.    The incident that gave rise to this action occurred in Sumter County,

Florida – a county located within this judicial district.  *See* 28 U.S.C. § 1391.

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

17.    At all times material to this action, Defendants, TMMTX, TMNA, TEMA, and TMC (collectively, the "TOYOTA DEFENDANTS"), were responsible for designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling the Toyota Tundra (bearing VIN: 5TFJA5DB7PX090047) at issue in this action ("Subject Truck").

18.    Within the Subject Truck, the TOYOTA DEFENDANTS installed a defective, dangerous, and unsafe fuel system.

19.    Within the Subject Truck, the TOYOTA DEFENDANTS installed insufficient passenger restraint systems to prevent death in the event of foreseeable incidents.

20.    Within the Subject Truck, the TOYOTA DEFENDANTS installed insufficient crash avoidance systems to prevent foreseeable collisions.

21.    The TOYOTA DEFENDANTS failed to design, manufacture, and sell the Subject Truck so that it was sufficiently crashworthy in foreseeable collisions.

22.    On or about April 19, 2023, Peter Thom purchased the Subject Truck "new," directly from TOYOTA's dealership in Tampa, Florida.

23.    Only hours later, in the early morning of April 20, 2023, Peter Thom was driving the Subject Truck north on County Road 475 S (also known as Sumter

County Road) towards County Road 470 when – suddenly and without warning – one or more defects in the Subject Truck caused Peter Thom to lose the ability to control the vehicle, the vehicle ignited, and Peter Thom sustained fatal injuries.

24.     By the design of Defendants, the Subject Truck was capable of sudden and unexpected loss of control, sudden and unexpected fire and burning, and a failure of the Subject Truck's occupant protection system to appropriately minimize, reduce, or prevent injuries – including death – to occupants, like Peter Thom, in foreseeable crashes like this one.

25.     In ordinary use, the Subject Truck should not be capable of sudden and unexpected loss of control or sudden and unexpected fire and burning and—even in the event of a crash or fire—the Subject Truck should have been equipped with occupant safety systems sufficient to minimize, reduce, or prevent the fatal injuries that Peter Thom sustained.  It was not.

26.     Among other critical safety issues present in the Subject Truck, all Defendants were on actual knowledge of a specific defect endangering the safety of the Subject Truck ***before the crash which forms the basis of this Action***; yet, the Defendants made no effort to remedy that defect in the Subject Truck before this crash:

5.    Description of Problem:

The subject vehicles are equipped with a plastic fuel tube that is held in place by a clamp and routed near metallic brake lines at the top of the fuel tank.    The clamp can allow the fuel tube to move into contact with the adjacent brake line under certain driving conditions.    Over time, driving and other induced vibrations can cause the fuel tube to rub against the brake line, which could result in a fuel leak if the fuel tube wall wears through.    A fuel smell while driving and or while parked may be noted; leaking fuel may also be observed near the right rear wheel area of the vehicle.    A fuel leak in the presence of an ignition source could increase the risk of fire.

27.    At least as early as November 2022, the TOYOTA DEFENDANTS had actual knowledge that their Third Generation Tundra (2022+) pick-up truck (which included the Subject Truck) suffered from a catastrophic defect that, if left unrepaired, would cause and contribute to fires, while also increasing the risk of catastrophic fires capable of killing owners, drivers, passengers, and bystanders:

November 2022 – December 2022

In November 2022, Toyota received a dealer report indicating the customer's vehicle was leaking fuel from the fuel tube on top of the fuel tank assembly.    The report indicated that the fuel tube appears to have been making contact with the frame rail.    The fuel tube was recovered for investigation.

28.    So well-known was the issue to the TOYOTA DEFENDANTS, that the TOYOTA DEFENDANTS were able to begin a variety of tests—to at least three (3) different testing standards—to determine the failure mode of the fuel tube within the larger fuel system.

29.    At or around the same time, the TOYOTA DEFENDANTS notified a component parts supplier of the now well-known issue and, at least according to the

TOYOTA DEFENDANTS, the fuel tubes resold by the TOYOTA DEFENDANTS)
were "out of specification:"

> Toyota visited the fuel tube supplier to understand the investigation results from other recovered fuel tubes, as well as to audit the current fuel tube manufacturing process.    During this audit, new and recovered fuel tubes were inspected on a check fixture, and it was found that the shape of the fuel tubes was out of specification.    Modified fuel tube tooling and procedures to bring the fuel tube back into specification began to be developed.

30.    Prior to August 7, 2023, all Defendants had actual knowledge that the fire risk in the Third Generation Tundra (2022+) pick-up truck (which included the Subject Truck) was so severe that more than half of the (very new) vehicles surveyed had a "contact condition" (i.e.: fuel tube contacting brake line) with the TOYOTA DEFENDANTS claiming that one vehicle had a fuel leak.

31.    The "one vehicle" claim is demonstrably false, as the TOYOTA DEFENDANTS were already on actual notice of no less than four (4) Third Generation Tundra (2022+) pick-up trucks with a fuel leak before the TOYOTA DEFENDANTS made any effort to notify the public or regulators, as required by law.

32.    When the TOYOTA DEFENDANTS finally notified regulators of the critical fire safety risk present in Third Generation Tundra (2022+) pick-up trucks, all Defendants were already aware of at least forty-one (41) Third Generation Tundra (2022+) pick-up trucks affected by the defective condition.

33.     Unfortunately, due to the delay in notification by all Defendants, Peter Thom was burned in the Subject Truck – just four (4) months before the Defendants finally admitted there was a critical fire safety risk in the Third Generation Tundra (2022+) pick-up trucks.

34.     At the time of the incident alleged above, Peter Thom used the Subject Truck in a manner intended and/or foreseeable to all Defendants.

**COUNT I**
**STRICT LIABILITY AGAINST**
**TOYOTA MOTOR MANUFACTURING, TEXAS, INC.**

35.     Plaintiff realleges paragraphs 1 through 34 above, as if restated verbatim herein.

36.     TMMTX is in the business of designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling automobiles, including the Subject Truck.

37.     TMMTX placed the Subject Truck in the stream of commerce—either directly or through distributors—all while TMMTX knew or should have known the manner in which the Subject Truck was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

38.     The Subject Truck was defective and unreasonably dangerous to ultimate users, operators or consumers, including Peter Thom, when sold and

distributed by TMMTX because of defects therein and because of TMMTX's failure to provide appropriate warnings, which permitted the Subject Truck to be sold in a dangerous condition, including but not limited to the following:

     a. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it had inadequate and/or defective safety devices and measures;

     b. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it did not have adequate safety devices to prevent damage and injury to users due to the defective condition of the Subject Truck;

     c. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected loss of control; and

     d. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected episodes of fire and burning; and

     e. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was equipped with insufficient and/or ineffective occupant safety systems; and

     f. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it failed to warn consumers, including Peter Thom, of the danger that the Subject Truck would experience sudden and unexpected loss of control and/or sudden and unexpected episodes of fire and burning, which would be exacerbated by insufficient and/or ineffective occupant safety systems in the Subject Truck.

39.    For the reasons set forth above, the Subject Truck was unreasonably dangerous to foreseeable users, including Peter Thom, who used the Subject Truck in an ordinary and foreseeable manner.  At the time TMMTX released the defective

14

Subject Truck into the stream of commerce, safer designs were technologically available and feasible and their use on the Subject Truck would have prevented the injuries and death Peter Thom sustained without substantially altering the design and/or costs of manufacturing the Subject Truck.

40.    The defects described above directly and proximately caused the incident and damages sustained by Plaintiff in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death of Peter Thom and Plaintiff's damages.

41.    As a direct and proximate result of the foregoing, Plaintiff suffered damages, including damages to the Putative Estate of Peter Thom, survivors, and beneficiaries, including:

    a.  loss of prospective net accumulations;
    b.  past loss of support;
    c.  past loss of services;
    d.  future loss of support;
    e.  future loss of services;
    f.  mental pain and suffering;
    g.  medical expenses due to injury;
    h.  medical expenses due to death;
    i.  funeral expenses due to death;
    j.  loss of companionship and protection;
    k.  all compensable charges against the Estate; and
    l.  all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and
    m.  punitive damages.

**WHEREFORE**, Plaintiff demands judgment against TOYOTA MOTOR MANUFACTURING, TEXAS, INC. for damages, costs, interest and such other

relief as this Court deems just.

## COUNT II
## NEGLIGENCE AGAINST
## <u>TOYOTA MOTOR MANUFACTURING, TEXAS, INC.</u>

42.    Plaintiff realleges paragraphs 1 through 34 above, as if restated verbatim herein.

43.    TMMTX designed, manufactured, constructed, assembled, tested, inspected, distributed, and/or sold the Subject Truck.

44.    **DUTY:** In designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling the Subject Truck, TMMTX had a duty to users, operators, consumers and bystanders, to provide products that were safe for their intended and foreseeable uses. TMMTX was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, and sell the Subject Truck in a reasonably safe condition so as not to present a danger to consumers who reasonably and expectedly under ordinary circumstances would come into contact with the Subject Truck, including Peter Thom.

45.    **BREACH:** TMMTX breached its duty of reasonable care owed to Peter Thom in one or more of the following ways:

       a. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it had adequate and/or effective safety devices and measures;

b. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck so that it was reasonably safe for all foreseeable uses;

c. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the Subject Truck on the market for sale to the public in a condition free of defects and hazards which created an unreasonable danger of injury or death to consumers under normal and foreseeable circumstances;

d. Marketing, promoting, advertising and representing that the Subject Truck was suitable for use when, in fact, it was not;

e. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it would not unexpectedly fail; and

f. Failing to provide adequate warnings, proper documentation or notices to alert consumers regarding the hazardous conditions described above.

46. **CAUSATION:** The negligence described above directly and proximately caused the death of Peter Thom and Plaintiff's damages in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death of Peter Thom and Plaintiff's damages.

47. **DAMAGES:** As a direct and proximate result of the foregoing, Plaintiff suffered damages, including damages to the Putative Estate of Peter Thom, survivors, and beneficiaries, including:

a. loss of prospective net accumulations;
b. past loss of support;
c. past loss of services;
d. future loss of support;
e. future loss of services;
f. mental pain and suffering;

17

      g.  medical expenses due to injury;

      h.  medical expenses due to death;

      i.   funeral expenses due to death;

      j.   loss of companionship and protection;

      k.  all compensable charges against the Estate; and

      l.   all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and

      m. punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, TOYOTA MOTOR MANUFACTURING, TEXAS, INC. for damages, costs, interest and such other relief as this Court deems just.

## COUNT III
## STRICT LIABILITY AGAINST
## <u>TOYOTA MOTOR NORTH AMERICA, INC.</u>

48.    Plaintiff realleges paragraphs 1 through 34 above, as if reinstated verbatim herein.

49.    TMNA is in the business of designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling automobiles, including the Subject Truck.

50.    TMNA placed the Subject Truck in the stream of commerce—either directly or through distributors—all while TMNA knew or should have known the manner in which the Subject Truck was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

51.    The Subject Truck was defective and unreasonably dangerous to ultimate users, operators or consumers, including Peter Thom, when sold and distributed by TMNA because of defects therein and because of TMNA's failure to provide appropriate warnings, which permitted the Subject Truck to be sold in a dangerous condition, including but not limited to the following:

a.   The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it had inadequate and/or defective safety devices and measures;

b.   The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it did not have adequate safety devices to prevent damage and injury to users due to the defective condition of the Subject Truck;

c.   The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected loss of control; and

d.   The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected episodes of fire and burning; and

e.   The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was equipped with insufficient and/or ineffective occupant safety systems; and

f.   The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it failed to warn consumers, including Peter Thom, of the danger that the Subject Truck would experience sudden and unexpected loss of control and/or sudden and unexpected episodes of fire and burning, which would be exacerbated by insufficient and/or ineffective occupant safety systems in the Subject Truck.

52.    For the reasons set forth above, the Subject Truck was unreasonably

dangerous to foreseeable users, including Peter Thom, who used the Subject Truck in an ordinary and foreseeable manner. At the time TMNA released the defective Subject Truck into the stream of commerce, safer designs were technologically available and feasible and their use on the Subject Truck would have prevented the injuries and death Peter Thom sustained without substantially altering the design and/or costs of manufacturing the Subject Truck.

53.    The defects described above directly and proximately caused the incident and damages sustained by Plaintiff in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death of Peter Thom and Plaintiff's damages.

54.    As a direct and proximate result of the foregoing, Plaintiff suffered damages, including damages to the Putative Estate of Peter Thom, survivors, and beneficiaries, including:

> a. loss of prospective net accumulations;
> b. past loss of support;
> c. past loss of services;
> d. future loss of support;
> e. future loss of services;
> f. mental pain and suffering;
> g. medical expenses due to injury;
> h. medical expenses due to death;
> i. funeral expenses due to death;
> j. loss of companionship and protection;
> k. all compensable charges against the Estate; and
> l. all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and
> m. punitive damages.

**WHEREFORE**, Plaintiff demands judgment against TOYOTA MOTOR NORTH AMERICA, INC. for damages, costs, interest and such other relief as this Court deems just.

## COUNT IV
## NEGLIGENCE AGAINST
## <u>TOYOTA MOTOR NORTH AMERICA, INC.</u>

55.    Plaintiff realleges paragraphs 1 through 34 above, as if restated verbatim herein.

56.    TMNA designed, manufactured, constructed, assembled, tested, inspected, distributed, and/or sold the Subject Truck.

57.    **DUTY:** In designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling the Subject Truck, TMNA had a duty to users, operators, consumers and bystanders, to provide products that were safe for their intended and foreseeable uses. TMNA was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, and sell the Subject Truck in a reasonably safe condition so as not to present a danger to consumers who reasonably and expectedly under ordinary circumstances would come into contact with the Subject Truck, including Peter Thom.

58.    **BREACH:** TMNA breached its duty of reasonable care owed to Peter Thom and Plaintiff in one or more of the following ways:

a. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it had adequate and/or effective safety devices and measures;

b. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck so that it was reasonably safe for all foreseeable uses;

c. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the Subject Truck on the market for sale to the public in a condition free of defects and hazards which created an unreasonable danger of injury or death to consumers under normal and foreseeable circumstances;

d. Marketing, promoting, advertising and representing that the Subject Truck was suitable for use when, in fact, it was not;

e. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it would not unexpectedly fail; and

f. Failing to provide adequate warnings, proper documentation or notices to alert consumers regarding the hazardous conditions described above.

59.    **CAUSATION:** The negligence described above directly and proximately caused Plaintiff's damages in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death of Peter Thom and Plaintiff's damages.

60.    **DAMAGES:** As a direct and proximate result of the foregoing, Plaintiff suffered damages, including damages to the Putative Estate of Peter Thom, survivors, and beneficiaries, including:

a. loss of prospective net accumulations;
b. past loss of support;

22

c.  past loss of services;

d.  future loss of support;

e.  future loss of services;

f.  mental pain and suffering;

g.  medical expenses due to injury;

h.  medical expenses due to death;

i.  funeral expenses due to death;

j.  loss of companionship and protection;

k.  all compensable charges against the Estate; and

l.  all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and

m. punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, TOYOTA MOTOR NORTH AMERICA, INC. for damages, costs, interest and such other relief as this Court deems just.

## COUNT V
## STRICT LIABILITY AGAINST
## TOYOTA MOTOR ENGINEERING &
## MANUFACTURING NORTH AMERICA, INC.

61.     Plaintiff realleges paragraphs 1 through 34 above, as if reinstated verbatim herein.

62.     TEMA is in the business of designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling automobiles, including the Subject Truck.

63.     TEMA placed the Subject Truck in the stream of commerce—either directly or through distributors—all while TEMA knew or should have known the manner in which the Subject Truck was reasonably likely to be used, including in

situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

64. The Subject Truck was defective and unreasonably dangerous to ultimate users, operators or consumers, including Peter Thom, when sold and distributed by TEMA because of defects therein and because of TEMA's failure to provide appropriate warnings, which permitted the Subject Truck to be sold in a dangerous condition, including but not limited to the following:

a. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it had inadequate and/or defective safety devices and measures;

b. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it did not have adequate safety devices to prevent damage and injury to users due to the defective condition of the Subject Truck;

c. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected loss of control; and

d. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected episodes of fire and burning; and

e. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was equipped with insufficient and/or ineffective occupant safety systems; and

f. The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it failed to warn consumers, including Peter Thom, of the danger that the Subject Truck would experience sudden and unexpected loss of control and/or sudden and unexpected episodes of fire and burning, which would be

exacerbated by insufficient and/or ineffective occupant safety systems in the Subject Truck.

65.     For the reasons set forth above, the Subject Truck was unreasonably dangerous to foreseeable users, including Peter Thom, who used the Subject Truck in an ordinary and foreseeable manner.  At the time TEMA released the defective Subject Truck into the stream of commerce, safer designs were technologically available and feasible and their use on the Subject Truck would have prevented the injuries and death Peter Thom sustained without substantially altering the design and/or costs of manufacturing the Subject Truck.

66.     The defects described above directly and proximately caused the incident and damages sustained by Plaintiff in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death of Peter Thom and Plaintiff's damages.

67.     As a direct and proximate result of the foregoing, Plaintiff suffered damages, including damages to the Putative Estate of Peter Thom, survivors, and beneficiaries, including:

    a.  loss of prospective net accumulations;
    b.  past loss of support;
    c.  past loss of services;
    d.  future loss of support;
    e.  future loss of services;
    f.  mental pain and suffering;
    g.  medical expenses due to injury;
    h.  medical expenses due to death;
    i.  funeral expenses due to death;

j.  loss of companionship and protection;
k.  all compensable charges against the Estate;
l.  all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and
m. punitive damages.

**WHEREFORE**, Plaintiff demands judgment against TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. for damages, costs, interest and such other relief as this Court deems just.

### COUNT VI
### NEGLIGENCE AGAINST
### TOYOTA MOTOR ENGINEERING &
### MANUFACTURING NORTH AMERICA, INC.

68.     Plaintiff realleges paragraphs 1 through 34 above, as if restated verbatim herein.

69.     TEMA designed, manufactured, constructed, assembled, tested, inspected, distributed, and/or sold the Subject Truck.

70.     **DUTY:**      In designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling the Subject Truck, TEMA had a duty to users, operators, consumers and bystanders, to provide products that were safe for their intended and foreseeable uses.  TEMA was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, and sell the Subject Truck in a reasonably safe condition so as not to present a danger to consumers who reasonably and expectedly under ordinary circumstances would come into contact with the Subject Truck,

26

including Peter Thom.

71.    **BREACH:** TEMA breached its duty of reasonable care owed to Peter

Thom and Plaintiff in one or more of the following ways:

    a. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it had adequate and/or effective safety devices and measures;

    b. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck so that it was reasonably safe for all foreseeable uses;

    c. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the Subject Truck on the market for sale to the public in a condition free of defects and hazards which created an unreasonable danger of injury or death to consumers under normal and foreseeable circumstances;

    d. Marketing, promoting, advertising and representing that the Subject Truck was suitable for use when, in fact, it was not;

    e. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it would not unexpectedly fail; and

    f. Failing to provide adequate warnings, proper documentation or notices to alert consumers regarding the hazardous conditions described above.

72.    **CAUSATION:** The negligence described above directly and proximately

caused Plaintiff's damages in that they directly, and in a natural and continuous

sequence, produced or contributed substantially to the death of Peter Thom and

Plaintiff's damages.

73.    **DAMAGES:** As a direct and proximate result of the foregoing, Plaintiff

suffered damages, including damages to the Putative Estate of Peter Thom,

survivors, and beneficiaries, including:

      a.  loss of prospective net accumulations;
      b.  past loss of support;
      c.  past loss of services;
      d.  future loss of support;
      e.  future loss of services;
      f.  mental pain and suffering;
      g.  medical expenses due to injury;
      h.  medical expenses due to death;
      i.  funeral expenses due to death;
      j.  loss of companionship and protection;
      k.  all compensable charges against the Estate;
      l.  all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and
      m.  punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, TOYOTA

MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. for

damages, costs, interest and such other relief as this Court deems just.

**COUNT VII**
**STRICT LIABILITY AGAINST**
**TOYOTA MOTOR CORPORATION**

74.    Plaintiff realleges paragraphs 1 through 34 above, as if restated

verbatim herein.

75.    TMC is in the business of designing, manufacturing, constructing,

assembling, testing, inspecting, distributing, and/or selling automobiles, including

the Subject Truck.

76.    TMC placed the Subject Truck in the stream of commerce—either

28

directly or through distributors—all while TMC knew or should have known the manner in which the Subject Truck was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

77.    The Subject Truck was defective and unreasonably dangerous to ultimate users, operators or consumers, including Peter Thom, when sold and distributed by TMC because of defects therein and because of TMC's failure to provide appropriate warnings, which permitted the Subject Truck to be sold in a dangerous condition, including but not limited to the following:

    a.  The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it had inadequate and/or defective safety devices and measures;

    b.  The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it did not have adequate safety devices to prevent damage and injury to users due to the defective condition of the Subject Truck;

    c.  The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected loss of control; and

    d.  The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was capable of sudden and unexpected episodes of fire and burning; and

    e.  The Subject Truck was designed, manufactured, assembled, and/or sold in such a manner that it was equipped with insufficient and/or ineffective occupant safety systems; and

    f.  The Subject Truck was designed, manufactured, assembled, and/or

sold in such a manner that it failed to warn consumers, including Peter Thom, of the danger that the Subject Truck would experience sudden and unexpected loss of control and/or sudden and unexpected episodes of fire and burning, which would be exacerbated by insufficient and/or ineffective occupant safety systems in the Subject Truck.

78.    For the reasons set forth above, the Subject Truck was unreasonably dangerous to foreseeable users, including Peter Thom, who used the Subject Truck in an ordinary and foreseeable manner.  At the time TMC released the defective Subject Truck into the stream of commerce, safer designs were technologically available and feasible and their use on the Subject Truck would have prevented the injuries and death Peter Thom sustained without substantially altering the design and/or costs of manufacturing the Subject Truck.

79.    The defects described above directly and proximately caused the incident and damages sustained by Plaintiff in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death of Peter Thom and Plaintiff's damages.

80.    As a direct and proximate result of the foregoing, Plaintiff suffered damages, including damages to the Putative Estate of Peter Thom, survivors, and beneficiaries, including:

        a.  loss of prospective net accumulations;
        b.  past loss of support;
        c.  past loss of services;
        d.  future loss of support;
        e.  future loss of services;

  f. mental pain and suffering;

  g. medical expenses due to injury;

  h. medical expenses due to death;

  i. funeral expenses due to death;

  j. loss of companionship and protection;

  k. all compensable charges against the Estate; and

  l. all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and

  m. punitive damages.

  **WHEREFORE**, Plaintiff demands judgment against TOYOTA MOTOR CORPORATION for damages, costs, interest and such other relief as this Court deems just.

**COUNT VIII**
**NEGLIGENCE AGAINST**
**TOYOTA MOTOR CORPORATION**

  81. Plaintiff realleges paragraphs 1 through 34 above, as if restated verbatim herein.

  82. TMC designed, manufactured, constructed, assembled, tested, inspected, distributed, and/or sold the Subject Truck.

  83. **DUTY:** In designing, manufacturing, constructing, assembling, testing, inspecting, distributing, and/or selling the Subject Truck, TMC had a duty to users, operators, consumers and bystanders, to provide products that were safe for their intended and foreseeable uses. TMC was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, and sell the Subject Truck in a reasonably safe

condition so as not to present a danger to consumers who reasonably and expectedly under ordinary circumstances would come into contact with the Subject Truck, including Peter Thom.

84. **BREACH:** TMC breached its duty of reasonable care owed to Peter Thom in one or more of the following ways:

      a. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it had adequate and/or effective safety devices and measures;

      b. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck so that it was reasonably safe for all foreseeable uses;

      c. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the Subject Truck on the market for sale to the public in a condition free of defects and hazards which created an unreasonable danger of injury or death to consumers under normal and foreseeable circumstances;

      d. Marketing, promoting, advertising and representing that the Subject Truck was suitable for use when, in fact, it was not;

      e. Failing to properly design, manufacture, assemble, and/or sell the Subject Truck in such a manner that it would not unexpectedly fail; and

      f. Failing to provide adequate warnings, proper documentation or notices to alert consumers regarding the hazardous conditions described above.

85. **CAUSATION:** The negligence described above directly and proximately caused the death of Peter Thom and Plaintiff's damages in that they directly, and in a natural and continuous sequence, produced or contributed substantially to the death

of Peter Thom and Plaintiff's damages.

86.    **DAMAGES:** As a direct and proximate result of the foregoing, Plaintiff

suffered damages, including damages to the Putative Estate of Peter Thom,

survivors, and beneficiaries, including:

a. loss of prospective net accumulations;
b. past loss of support;
c. past loss of services;
d. future loss of support;
e. future loss of services;
f. mental pain and suffering;
g. medical expenses due to injury;
h. medical expenses due to death;
i. funeral expenses due to death;
j. loss of companionship and protection;
k. all compensable charges against the Estate; and
l. all other compensable damages, including those available pursuant to Section 768, Florida Statutes; and
m. punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, TOYOTA

MOTOR CORPORATION for damages, costs, interest and such other relief as this

Court deems just.

## JURY DEMAND

Respectfully, Plaintiff demands a jury trial on all issues so triable.

**WHEREFORE**, Plaintiff prays that upon final judgment, Plaintiff may have

and recover: trial by jury which is hereby demanded; judgment against Defendants;

interest as allowed by law; actual damages; cost of suit; and such other relief, at law

or equity, to which he may be justly entitled.

Respectfully submitted this 13th day of February, 2025.

*/s/ Andrew F. Knopf*
**ANDREW F. KNOPF, ESQ.**
FBN: 658871
**J. BLAISE FISCHBACH, ESQ.**
FBN: 118194
**PAUL | KNOPF | BIGGER**
1560 N. Orange Ave. Suite 300
Winter Park, FL32789
Ph.: (407) 622-2111
Fax: (407) 622-2112
*Attorneys for Plaintiff*
Email: andrew@pkblawfirm.com
Email: teamAFK@pkblawfirm.com
Email: blaise@pkblawfirm.com
Email: abla@pkblawfirm.com
Email: stephanie@pkblawfirm.com

**BRENT R. BIGGER, ESQ.**
FBN: 823961
**PAUL | KNOPF | BIGGER**
511 W. Bay Street, Suite 450
Tampa, FL 33606
Ph.: (813) 609-2993
Fax: (813) 864-6777
*Attorneys for Plaintiff*
Email:brent@pkblawfirm.com
Email: abla@pkblawfirm.com
Email: teamBRB@pkblawfirm.com